MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------X
JUAN DE DIOS PEREZ MIJANGOS and
SALVADOR PABLO-ORTIZ, *individually*
*and on behalf of others similarly situated,*

*Plaintiffs*,

-against-

JESA 31, INC. (D/B/A ZAYTOON (F/K/A
TAKSIM AND TAKSIM SQUARE)), EKREM
OZ, FARRUKH TOSHKHOJAEV,
BAHOVADDIN HAKIMOV, and FARRUKH
TOJIBOEV,

*Defendants.*

------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Juan de Dios Perez Mijangos and Salvador Pablo-Ortiz , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Jesa 31, Inc. (d/b/a Zaytoon (f/k/a Taksim and Taksim Square)), ("Defendant Corporation"), Ekrem Oz, Farrukh Toshkhojaev, Bahovaddin Hakimov, and Farrukh Tojiboev, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

**NATURE OF ACTION**

1.    Plaintiffs are former employees of Defendants Jesa 31, Inc. (d/b/a Zaytoon (f/k/a Taksim and Taksim Square)), Ekrem Oz, Farrukh Toshkhojaev, Bahovaddin Hakimov, and Farrukh Tojiboev.

2.     Defendants own, operate, or control a Turkish restaurant, located at 1030 Second Avenue, New York, NY 10022 under the name "Zaytoon (f/k/a Taksim and Taksim Square)".

3.     Upon information and belief, individual Defendants Ekrem Oz, Farrukh Toshkhojaev, Bahovaddin Hakimov, and Farrukh Tojiboev, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.     Plaintiffs were employed as food preparers, cooks, dishwashers, butchers/meat preparers and ostensibly as a delivery worker at the restaurant located at 1030 Second Avenue, New York, NY 10022.

5.     Plaintiff Perez was ostensibly employed as a delivery worker. However, he was required to spend a considerable part of his work day performing non-tipped duties, including but not limited to preparing food and cooking food (hereafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.     Defendants employed and accounted for Plaintiff Perez as a delivery worker in their payroll, but in actuality his duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.    Regardless, at all relevant times, Defendants paid Plaintiff Perez at a rate that was lower than the required tip-credit rate.

11.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Perez's non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Perez's  actual duties in payroll records by designating them as a delivery worker instead of a non-tipped employee. This allowed Defendants to avoid paying Plaintiff perez at the minimum wage rate and enabled them to pay him at the tip-credit rate (which they still failed to do).

13.    Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

14.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

18.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Turkish restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

19.    Plaintiff Juan de Dios Perez Mijangos ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in Kings County, New York.

20.    Plaintiff Perez was employed by Defendants at Zaytoon (f/k/a Taksim and Taksim Square) from approximately 2005 until on or about April 21, 2019.

21.    Plaintiff Salvador Pablo-Ortiz ("Plaintiff Pablo-Ortiz" or "Mr. Pablo-Ortiz") is an adult individual residing in New York County, New York.

22.    Plaintiff Pablo-Ortiz was employed by Defendants at Zaytoon (f/k/a Taksim and Taksim Square) from approximately February 2004 until on or about April 22, 2019.

*Defendants*

23.    At all relevant times, Defendants owned, operated, or controlled a Turkish restaurant, located at 1030 Second Avenue, New York, NY 10022 under the name "Zaytoon (f/k/a Taksim and Taksim Square)".

24.    Upon information and belief, Jesa 31, Inc. (d/b/a Zaytoon (f/k/a Taksim and Taksim Square)) was a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1030 Second Avenue, New York, NY 10022.

25.    Defendant Ekrem Oz is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ekrem Oz is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Ekrem Oz possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

26.    Defendant Farrukh Toshkhojaev is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Farrukh Toshkhojaev is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Farrukh Toshkhojaev possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

27.    Defendant Bahovaddin Hakimov is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Bahovaddin Hakimov is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Bahovaddin Hakimov possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

28.    Defendant Farrukh Tojiboev is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Farrukh Tojiboev is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Farrukh Tojiboev possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## SUCCESSOR LIABILITY

29.    Upon information and belief, Defendants Farrukh Toshkhojaev, Bahovaddin Hakimov, and Farrukh Tojiboev purchased Zaytoon (f/k/a Taksim and Taksim Square) from Defendants Jesa 31, Inc. (d/b/a Zaytoon (f/k/a Taksim and Taksim Square)), Ekrem Oz, on or about October 2017.

30.    There was, until the date of closing, substantial continuity in the business operations of Zaytoon (f/k/a Taksim and Taksim Square) since the sale because Defendants Farrukh

Toshkhojaev, Bahovaddin Hakimov, and Farrukh Tojiboev use the same location and work force as was used by the prior owners, the same jobs that existed under prior owners existed  after the sale, furthermore, the restaurant was operated under the same working conditions by the new owners as the prior owners, the new owners use the same equipment that was used by prior owners, and the new owners sold essentially the same products as were sold by the prior owners.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

31.   Defendants operated a Turkish restaurant located in the Sutton Place section of Manhattan in New York City.

32.   Individual Defendant, Ekrem Oz, possessed operational control over Defendant Corporation, possessed ownership interests in Defendant Corporation, and controlled significant functions of Defendant Corporation.

33.   Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

34.   Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

35.   Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

36.   In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

37.    Upon information and belief, Individual Defendant Ekrem Oz operated Defendant Corporation as either an alter ego of himself and/or failed to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporation for his own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

    f)  intermingling assets and debts of his own with Defendant Corporation,

    g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

38.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.

39.    Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

40.    In each year from 2013 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

41.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

42.    Plaintiffs are former employees of Defendants who ostensibly were employed as food preparers, cooks, dishwashers, butchers/meat preparers and ostensibly as a delivery worker. However, Plaintiff Perez, who was ostensibly required to do deliveries, spent over 20% of each shift performing the non-tipped duties described above.

43.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Juan de Dios Perez Mijangos*

44.    Plaintiff Perez was employed by Defendants from approximately 2005 until on or about April 21, 2019.

45.    Defendants ostensibly employed Plaintiff Perez primarily as a food preparer and a cook and occasionally, as a delivery worker.

46.    However, while required to do deliveries, Plaintiff Perez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

47.    Although Plaintiff Perez ostensibly and occasionally was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

48.  Plaintiff Perez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

49.  Plaintiff Perez's work duties required neither discretion nor independent judgment.

50.  Throughout his employment with Defendants, Plaintiff Perez regularly worked in excess of 40 hours per week.

51.  From approximately April 2013 until on or about April 21, 2019, Plaintiff Perez worked from approximately 11:00 a.m. until on or about 9:00 p.m., 6 days a week (typically 60 hours per week).

52.  Throughout his employment, Defendants paid Plaintiff Perez his wages in cash.

53.  From approximately April 2013 until on or about April 21, 2019, Defendants paid Plaintiff Perez a fixed salary of $620 per week.

54.  Plaintiff Perez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

55.  For example, Defendants required Plaintiff Perez to work an additional 5 minutes past his scheduled departure time every day, and did not pay him for the additional time he worked.

56.  Defendants granted Plaintiff Perez 30-minutes breaks or meal periods; however, they were interrupted at least once a week.

57.  While performing delivery tasks, Plaintiff Perez was never notified by Defendants that his tips were being included as an offset for wages.

58.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Perez's wages.

59.    Prior to October 2017, Plaintiff Perez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

60.    From approximately April 2013 until on or about October 2017, Defendants required Plaintiff Perez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

61.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

62.    Defendants did not provide Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

63.    Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Salvador Pablo-Ortiz*

64.    Plaintiff Pablo-Ortiz was employed by Defendants from approximately February 2004 until on or about April 22, 2019.

65.    Defendants employed Plaintiff Pablo-Ortiz as a dishwasher at the beginning of his employment and then as a butcher/meat preparer.

66.    Plaintiff Pablo-Ortiz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

67.    Plaintiff Pablo-Ortiz's work duties required neither discretion nor independent judgment.

68.     Throughout his employment with Defendants, Plaintiff Pablo-Ortiz regularly worked in excess of 40 hours per week.

69.     From approximately April 2013 until on or about April 22, 2019, Plaintiff Pablo-Ortiz worked from approximately 12:00 p.m. until on or about 12:00 a.m. to 12:30 a.m., 6 days a week (typically 72 to 75 hours per week).

70.     From approximately April 2013 until on or about October 2017, Defendants paid Plaintiff Pablo-Ortiz his wages by personal check.

71.     From approximately November 2017 until on or about April 22, 2019, Defendants paid Plaintiff Pablo-Ortiz his wages in cash.

72.     From approximately April 2013 until on or about April 2014, Defendants paid Plaintiff Pablo-Ortiz a fixed salary of $550 per week.

73.     From approximately April 2014 until on or about April 2015, Defendants paid Plaintiff Pablo-Ortiz a fixed salary of $600 per week.

74.     From approximately April 2015 until on or about April 2016, Defendants paid Plaintiff Pablo-Ortiz a fixed salary of $670 per week.

75.     From approximately April 2016 until on or about April 2019, Defendants paid Plaintiff Pablo-Ortiz a fixed salary of $700 per week.

76.     Defendants seldom granted Plaintiff Pablo-Ortiz uninterrupted breaks or meal periods.

77.     Prior to  October 2017, Plaintiff Pablo-Ortiz was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

78.    After October 2017, under the new management, and though there was a time-keeping recording system, Plaintiff Pablo-Ortiz seldom used it; furthermore, the machine would turn off at 10:30 p.m. at night and would not allow him to clock out at closing, when he stopped working.

79.    Thus, although Plaintiff Pablo-Ortiz was allowed to keep track of his time, Defendants' system made him record fewer hours than he actually worked. As a result, Plaintiff Pablo-Ortiz was not compensated for all of the hours that he worked.

80.    From approximately April 2013 until on or about October 2017, Defendants required Plaintiff Pablo-Ortiz to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

81.    From approximately 2017, no notification, either in the form of posted notices or other means, was ever given to Plaintiff Pablo-Ortiz regarding overtime and wages under the FLSA and NYLL.

82.    Defendants did not provide Plaintiff Pablo-Ortiz an accurate statement of wages, as required by NYLL 195(3).

83.    Defendants did not give any notice to Plaintiff Pablo-Ortiz, in English and in Spanish (Plaintiff Pablo-Ortiz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

84.    Defendants required Plaintiff Pablo-Ortiz to purchase "tools of the trade" with his own funds—including knives.

*Defendants' General Employment Practices*

85.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week

without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

86.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

87.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

88.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

89.    Defendants required Plaintiff Perez and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

90.    Plaintiff Perez and all similarly situated employees, ostensibly and occasionally were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

91.    Plaintiff Perez's delivery duties, while performing those tasks, were not incidental to his occupation as a tipped worker, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

92.    Plaintiff Perez and all other tipped workers were paid at a rate that was lower than the required lower tip-credit rate by Defendants.

93.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiff Perez's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

94.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

95.     In violation of federal and state law as codified above, Defendants may have classified Plaintiff Perez and other tipped workers as tipped employees, and paid them at a rate that was lower than the required lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

96.     Defendants failed to inform Plaintiff Perez who received tips that Defendants intended to take a deduction against Plaintiff Perez's earned wages for tip income, as required by the NYLL before any deduction may be taken.

97.     Defendants failed to inform Plaintiff Perez who received tips, that his tips were being credited towards the payment of the minimum wage.

98.     Defendants failed to maintain a record of tips earned by Plaintiff Perez who worked as a delivery worker for the tips he received.

99.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

100.    From approximately April 2013 until on or about October 2017, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

101.    Defendants paid Plaintiffs their wages by personal check and then in cash.

102.   Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

103.   Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

104.   Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

105.   Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

106.   Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

107.   Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the

- 16 -

minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

108.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

109.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek, and willfully failing to keep records, as required under the FLSA.

110.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

111.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

112.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

113.    Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

114.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

115.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

116.  Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

117.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

118.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

119.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

120.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

121.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

122.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

123.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

124.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

125.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

126.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

127.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

128.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

129.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

130.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

131.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

132.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

133.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

134.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

135.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

136.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

137.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

138.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

139.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

140.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

141.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

142.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

143.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

144.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)      All such other and further relief as the Court deems just and proper.

### JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        May 9, 2019

                                    MICHAEL FAILLACE & ASSOCIATES, P.C.

                          By:      /s/ Michael Faillace
                                   Michael Faillace [MF-8436]
                                   60 East 42nd Street, Suite 4510
                                   New York, New York 10165
                                   Telephone: (212) 317-1200
                                   Facsimile: (212) 317-1620
                                   *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

—————

Faillace@employmentcompliance.com

April 23, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Salvador Pablo-Ortiz

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              23 de abril 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com


April 23, 2019
BY HAND


TO:     Clerk of Court,


I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Juan de Dios Perez Mijangos


Legal Representative / Abogado:          Michael Faillace & Associates, P.C.


Signature / Firma:


Date / Fecha:                            23 de abril de 2019


*Certified as a minority-owned business in the State of New York*